```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RENAISSANCE SEARCH PARTNERS,            :
                                        :    12cv5638 (DLC)
                    Plaintiff,          :
                                        :    OPINION & ORDER
          -v-                           :
                                        :
RENAISSANCE LIMITED LLC, et al.,        :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X
```

APPEARANCES:

For plaintiff:

James A. DeFelice
SARNO & DeFELICE, LLC
235 W. 23rd St., 5th Fl.
New York, NY 10011


DENISE COTE, District Judge:

On February 3, 2014, a default was entered against defendant Darryl Miller ("Miller") and the above-captioned action was referred to Magistrate Judge Netburn for an inquest concerning damages. On July 3, 2014, Judge Netburn issued a Report and Recommendation ("Report") recommending that plaintiff be awarded no damages. For the following reasons, the plaintiff is awarded compensatory and punitive damages.

## BACKGROUND

The facts that follow are drawn from the complaint and plaintiff's submissions in support of its request for damages

and injunctive relief.  Plaintiff Renaissance Search Partners ("Renaissance Search") is an executive search firm founded by three principals, Andrea Henderson ("Henderson"), Tony Brown ("Brown"), and Miller, that was to be managed in accordance with an operating agreement executed on July 15, 2010.  Each principal took a one-third ownership interest in Renaissance Search.  Plaintiff alleges that Miller violated that agreement by creating a new executive search firm, Renaissance Limited LLC ("Renaissance Limited"), in May 2011, with defendants Colin Cumberbatch ("Cumberbatch") and Robert McCloud ("McCloud").

In July 2010, Renaissance Search had business relationships and placement contracts with 16 clients, including PriceWaterhouseCoopers LLC, Deutsche Bank, and Revlon.  In 2011, Miller appropriated Renaissance Search's private client list for Renaissance Limited and misrepresented to certain current and potential clients that Renaissance Search was now doing business as Renaissance Limited.

In particular, Renaissance Search had a contract with Pershing, a division of Bank of New York, Mellon.  Purporting to act under that contract, Miller placed an executive with Pershing and instructed Pershing to pay the commission to Renaissance Limited (the "Pershing Commission").  Pershing did so.  On September 8, 2011, Renaissance Search was in the process

of placing two executives with Pershing and its corporate parent.  On September 22, 2011, Henderson informed Pershing of Miller's misrepresentations, and on November 14, 2011, advised Pershing that payment of the Pershing Commission was still due to Renaissance Search.  Renaissance Search's relationship with Bank of New York, Mellon was damaged and Renaissance Search has not performed further work for that client.

The amount of the Pershing Commission is uncertain.  In the Complaint, plaintiff alleges the Pershing Commission was "at least $25,000."  In Henderson's affidavit submitted in support of plaintiff's proposed damages findings, however, Henderson states that "Miller earned a commission of $30,000.00 for placing an employee with Pershing."  Henderson's affidavit does not reveal the source of this information, or aver that its statements are made on the basis of personal knowledge.

According to its income tax returns, Renaissance Search earned $94,750 in gross income its 2010 tax year and $91,062 in net income.  In 2011, the year in which the Pershing Commission was paid to Miller, Renaissance Search earned $77,475 in gross income and $60,912 in net income.  Renaissance Search earned no income in 2012.

On behalf of Renaissance Search, Miller had contracted with third-party Go Daddy to host Renaissance Search's website and

email. When the Go Daddy contract expired on June 1, 2012, Miller refused to renew it, leading to a suspension of Renaissance Search's website and email.

On May 25, 2011, Renaissance Limited launched a website that is similar in many respects to Renaissance Search's website, both in its appearance and in the verbatim copying of certain text. That afternoon, Renaissance Limited's website designer, Dianna Rogers ("Rogers"), sent an email to Miller and McCloud stating that "the home page is up along with the other pages that say Under Construction." Rogers writes, "let's discuss content for the rest of the site so we can get it finished. Would you like me to take the info from the other Renaissance site and change it a little, or take bits and pieces from similar sites and reword?"

On September 8, 2011, Henderson sent McCloud a cease and desist letter concerning the use of the name "Renaissance Limited" and Renaissance Limited's website. The letter advises of Miller's conduct, and it charges that Renaissance Limited's name was chosen to lead clients to confuse it with Renaissance Search and that its website makes "unauthorized use of [Henderson's] copyrightable work" in Renaissance Search's website. Henderson demanded that Renaissance Limited's "[c]opyright and [t]rademark [i]nfringement" cease within one

4

week.  Renaissance Limited continued operating under that name and its website remained up.

Plaintiff consequently filed this action on July 24, 2012. Plaintiff's complaint (the "Complaint") includes claims against Miller, among others, for tortious interference with contract, copyright infringement, trademark infringement, unjust enrichment, breach of contract, and breach of fiduciary duty.

On November 27, 2012, Judge Netburn held a settlement conference, where plaintiff and defendants other than Miller reached an agreement to settle this case requiring defendants to pay plaintiff $75,000, dissolve Renaissance Limited, and henceforth conduct business under a new name (the "Settlement Agreement").  Counsel for defendants, including Miller, was present at the conference, and McCloud and Cumberbatch appeared by telephone.  On August 5, 2013, plaintiff filed a motion to enforce that agreement against all defendants, including Miller. Plaintiff's motion was referred to Judge Netburn, and on October 15, 2013 she issued a Report and Recommendation advising that the motion be granted as to the other defendants and denied as to Miller.  As to Miller, Judge Netburn recommended that default be entered against him for failure to defend this action, as he had failed to comply with a court order directing him to attend the settlement conference and failed to oppose plaintiff's

5

motion to enforce the Settlement Agreement.  On December 13, 2013, this Court entered an Order that enforced the Settlement Agreement against defendants other than Miller and required full payment by January 17, 2014, but "decline[d] . . . to enter an immediate default as to Miller."  Instead, the Court issued an Order to Show Cause that "g[a]ve Miller a final opportunity to continue defending this action."  That Order to Show Cause set a hearing date of January 9, 2014.

By letter of January 8, Miller's then counsel, Ravinder Bhalla ("Bhalla") wrote the Court to advise that he "was completely unaware, until th[at] morning," of the December 13 Order to Show Cause.  The Court adjourned the January 9 hearing to January 24.  At the January 24 hearing, Bhalla appeared and advised the Court that Miller wished to change counsel.  The Court issued a January 27 Order setting a new hearing date of February 7 that advised that "[a] failure to appear by Mr. Miller or his new counsel, will result in the entry of a default against him and an inquest for a determination of damages."  Bhalla served this Order on Miller on January 28.  No one appeared for Miller at the February 7 hearing.  Accordingly, a default was entered against Miller on February 10 and this case was referred to Judge Netburn for an inquest to determine damages.

Plaintiff submitted proposed findings of fact and conclusions of law on April 29, 2014 ("Proposed Findings"). Plaintiff requested damages in the amount of $131,112.50 for lost profits, trebled to $393,337.50 due to Miller's willful trademark infringement, as well as statutory damages of $150,000 for willful copyright infringement.  Plaintiff also requested a permanent injunction against Miller barring future trademark and copyright infringement.

On July 3, 2014, Judge Netburn issued a Report recommending that plaintiff be awarded no damages and denied the injunctive relief it seeks.  Judge Netburn found that the Complaint states a claim for breach of contract, tortious interference with Renaissance Search's contract with Pershing, breach of fiduciary duty, and trademark infringement.  Judge Netburn held that Miller was not liable for unjust enrichment, finding that claim duplicative of the tortious interference and breach of fiduciary duty claims; was not liable for tortious interference with plaintiff's contract with Go Daddy, because the contract had expired when plaintiff Miller wrongfully refused to renew it; and was not liable for copyright infringement, as plaintiff did not allege or submit any evidence that it owns a registered copyright in the work at issue.

The Report recommends that plaintiff not be awarded

damages, as plaintiff "fails to submit evidence capable of establishing with reasonable certainty the basis for the[] alleged damages."  Judge Netburn recognized that plaintiff might be entitled to damages in the amount of the Pershing Commission on its tortious interference and breach of fiduciary duty claims, but found that this amount is uncertain.  As noted above, the Complaint alleges it was "at least $25,000"; Henderson, in her affidavit submitted with the Proposed Findings, states it was $30,000, but does not establish any basis for her purported knowledge.  Plaintiff offers no other evidence concerning this commission.  Accordingly, Judge Netburn found that "plaintiff has failed to prove damages with reasonable certainty with respect to Miller's conduct involving the Pershing contract or misrepresenting Renaissance Limited as a successor to Renaissance Search."

Judge Netburn also rejected plaintiff's calculation of lost profits.  Plaintiff proposed a finding of $101,112.50 in lost profits in 2012.  Plaintiff calculated that figure by averaging its 2010 income and its 2011 income (with 2011 increased by $30,000 attributed to the Pershing contract) and subtracting its actual income in 2012 ($0).  Judge Netburn held that "plaintiff's methodology of using the average of past annual earnings and claiming that this amount was lost in 2012 as a

8

combined result of all the facts alleged in four distinct claims is flawed and injects too much speculation to satisfy the 'reasonable certainty' standard."

Finally, the Report recommended that no punitive damages or injunctive relief be granted.  The Report notes that plaintiff did not request nominal damages, and that without an award of actual or nominal damages, punitive damages cannot be granted under New York law.  And Judge Netburn found that the requested injunction would be inappropriate where plaintiff failed to request this relief in its Complaint.

On July 18, plaintiff filed objections (the "Objections") to the Report.  Plaintiff "agrees with the R&R as to liability," but objects to the Report on three grounds: (1) the evidence supports an award of $131,112.50 for lost profits; (2) in the alternative, the Court should award plaintiff $25,000 for the Pershing Commission, because Miller has admitted that allegation in the Complaint; or (3) in the alternative, plaintiff should be entitled to a hearing or jury trial on actual and punitive damages as the evidence of Miller's profits is in the possession of Miller or third parties.

## DISCUSSION

When considering a magistrate judge's report, a district court "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  A district court is to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  Skaff v. Progress Int'l, LLC, 12 Civ. 9045 (KPF), 2014 WL 856521, at *3 (S.D.N.Y. Mar. 4, 2014) (citation omitted).

Plaintiff's Objections are limited.  As noted above, plaintiff does not object to Judge Netburn's conclusions regarding liability.  Nor does plaintiff object to Judge Netburn's holding that trebling of damages is inappropriate and that an injunction should not issue.  As there is no clear error on the face of the record as to these conclusions, the Report is adopted insofar as it concerns Miller's liability, and insofar as it rejects trebling of damages and the issuance of an injunction, for the reasons stated therein.

**I.  Lost Profits**

Where "plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and plaintiff submits "an affidavit showing the amount due," the Clerk of Court must enter judgment for that amount.  Fed. R. Civ. P. 55(b)(1).  Otherwise,

plaintiff must apply to the district court, which may refer the matter to a magistrate judge for an inquest on damages.  Fed. R. Civ. P. 55(b)(2).  For "while a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted).

Damages for lost profits may only be awarded where the "amount of such damages [are established] with reasonable certainty."  Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000).  "Although lost profits need not be proven with mathematical precision, they must be capable of measurement based upon known reliable factors without undue speculation." Id. (citation omitted).  Evidence will support an award for lost profits where the figure is a "just and reasonable inference," as opposed to "speculation or guesswork."  Autowest, Inc. v. Peugeot, Inc., 434 F.2d 556, 566 (2d Cir. 1970) (quoting Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946)).

"When a difficulty faced in calculating damages is attributable to the defendant's misconduct, some uncertainty may be tolerated," Whitney v. Citibank, N.A., 782 F.2d 1106, 1118 (2d Cir. 1986), provided that "the existence of damage is

certain, and the only uncertainty is as to its amount." Schonfeld, 218 F.3d at 174 (citation omitted). "Hard evidence of a claimant's earning history may surely be an aid to proof of lost profits," but "in many cases, the most probative evidence of lost profits may well be . . . direct evidence of earnings specifically diverted from a claimant by culpable conduct of another." Am. Fed. Grp., Ltd. v. Rothenberg, 136 F.3d 897, 913 (2d Cir. 1998); see also Autowest, Inc. v. Peugeot, Inc., 434 F.2d 556, 567 (2d Cir. 1970) (affirming damages award to a new franchisee based on "disinterested projections resting on reasonable and debatable assumptions, the actual sales experience of plaintiff's successor, [and] the sales record of comparable [businesses]").

Taking the Pershing Commission first, plaintiff has failed to establish a basis for finding the amount paid to Renaissance Limited was either $25,000 or $30,000. Plaintiff's invocation of Rule 55(b) is unavailing. Rule 55(b)(1) permits the Clerk of Court to enter judgment "for a sum certain or a sum that can be made certain by computation" after plaintiff submits "an affidavit showing the amount due." Here, Henderson's affidavit claims $30,000, but does not appear to be based on personal knowledge, and plaintiff has abandoned its claim to that amount. Instead, plaintiff now seeks the $25,000 alleged in the

Complaint, arguing that Miller conceded the Commission was "at least $25,000" when he defaulted.  Because "a party's default . . . is not considered an admission of damages," plaintiff's argument fails.  Cement & Concrete Workers, 699 F.3d at 234 (citation omitted).

   Plaintiff's prior earnings, however, do establish a basis for an award of $91,062 on plaintiff's claim for breach of fiduciary duty.  In tax year 2010, the only year Miller did not interfere with plaintiff's business, Renaissance Search earned net income of $91,062.  In 2011, the year Miller misappropriated the Pershing Commission, plaintiff earned net income of $60,912.  In 2012, following the damage done to plaintiff's client relationships, plaintiff earned nothing.  Plaintiff proposes that $30,000 for the Pershing Commission should be added to its 2011 gross income, resulting in an adjusted 2011 gross income of $107,475.  Plaintiff then proposes that this figure be averaged with its 2010 gross income to calculate an average yearly gross income of $101,112.25.  Yet net income (profit), rather than gross income, is the relevant figure here.  And because the amount of the Pershing Commission has not been established, the Court discards the 2011 net income and looks to 2010 net income for a reliable estimate of the 2012 profit lost due to Miller's misconduct: $91,062.  Plaintiff is also entitled to prejudgment

interest on these damages from January 1, 2013, the first day following Renaissance Search's 2012 tax year, at a rate of nine percent per annum.  See N.Y. C.P.L.R. § 5001.  As set forth below, Miller's payment to plaintiff of these compensatory damages is to be offset by any amounts paid to plaintiff by the other defendants pursuant to the Settlement Agreement.

**II.  Punitive Damages**

Under New York law, punitive damages may be awarded "in fraud and deceit cases where the defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations."  Evans v. Ottimo, 469 F.3d 278, 283 (2d Cir. 2006) (citation omitted).  "The misconduct must be exceptional, as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness or has engaged in outrageous or oppressive intentional misconduct . . . ."  Ross v. Louise Wise Servs., Inc., 836 N.Y.S.2d 509, 516 (2007) (citation omitted).  "[I]nfliction of economic injury, especially when done intentionally through affirmative acts of misconduct can warrant a substantial penalty."  Motorola Credit Corp. v. Uzan, 509 F.3d 74, 87 (2d Cir. 2007) (quoting BMW of N. Am. v. Gore, 517 U.S. 559, 576 (1996)).  To ensure an award accords with the Due Process

14

Clause, courts are to be guided by "(1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to the actual harm inflicted, and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." <u>Stampf v. Long Island R.R. Co.</u>, 761 F.3d 192, 209 (2d Cir. 2014) (citation omitted).

Punitive damages are appropriate here in connection with Miller's breach of fiduciary duty.  Miller founded Renaissance Search with Henderson and Brown in July 2010.  Less than one year later, Miller had created Renaissance Limited, a firm with a name chosen to fool Renaissance Search's clients into believing -- as Miller misrepresented -- that Renaissance Limited was the same entity.  Miller then misappropriated Renaissance Search's private client list, contacting its clients and even performing work and receiving payment under Renaissance Search's contract with Pershing.  Unsurprisingly, Miller's conduct poisoned Renaissance Search's relationship with some of these clients, including Pershing.  Miller went so far as to copy sections of Renaissance Search's website for his new company and then cause Renaissance Search's website to be taken down.  Miller's wanton betrayal of his former business partners and his gross misuse of his position of trust in Renaissance

15

Search, as well as his attempt to defraud public companies in order to rob Renaissance Search of promised business and good will, warrant the imposition of punitive damages here equal to one-half of the compensatory damages awarded to Renaissance Search for Miller's breach: $45,531.  Cf. Motorola, 509 F.3d at 87 (affirming award of approximately one-half compensatory damages where defendants fraudulently obtained loans from plaintiff corporations).

## CONCLUSION

The Clerk of Court is directed to enter a default judgment against Miller equal to the sum of (1) $91,062 in compensatory damages, with prejudgment interest, at the rate of nine percent per annum, from January 1, 2013; and (2) $45,531 in punitive damages.  For purposes of this judgment, any payment by Miller's co-defendants to plaintiff pursuant to the Settlement Agreement shall constitute payment by Miller to plaintiff of compensatory damages in the same amount. Such payments will not affect Miller's obligation to pay punitive damages.  The Clerk of Court shall close this case.

SO ORDERED:

Dated:    New York, New York
          October 1, 2014

_____
DENISE COTE
United States District Judge

16